I wonder if those who are going to argue this case would step up and identify themselves for the record. Good morning, Your Honors. My name is Brett Zeve. I represent Anthony Johnson. Good morning, Mr. Zeve. Have you been here before? I have. Okay, and you are Nancy Coletti. Yes, good morning. Good morning, Ms. Coletti. You've also been here before. Fifteen minutes per side and you can save up from your argument, Mr. Zeve, any portion you wish for a response. I'd like to reserve a couple minutes for a response. I think you can safely assume we've read your briefs. Thank you, Your Honor. May it please the Court. Your Honors, let's pretend for just a moment that the accountability statute is just a simple math equation. You've got the statute and the jury instruction and what the Supreme Court says on one hand. Let's say that to prove accountability that all says you've got to prove A and you have to prove B. On the other hand, we have what the prosecutor argued in his closing argument here. He essentially said you don't have to prove A and B. We can prove this whole other thing, C. And I think it's important that you're addressing that issue. Manifest way to the evidence. That's what I was going to ask you. Is that what you're addressing now? I'm sorry, Your Honors. I'm going to address issue two. I'm prepared to answer any questions this Court may have on the other issues, but I'm going to proceed on the jury answer. But you're talking about the state's alleged misconduct in Republic. Absolutely correct, Your Honor. Okay. That's what I thought. Essentially what the prosecutor argued to the jury here, Your Honors, is that once Anthony saw Mr. Sims get out of the car and then open fire on Mr. Bailey, regardless of whether he knew what Mr. Sims was going to do and regardless of whether he knew of this plan or had any intent whatsoever, the state argued that that doesn't matter. Once Mr. Sims opened fire, he stayed in the car and then he waited for Sims to come and then he drove him away. That is all conduct that occurred after the murder was already over. Once Mr. Sims gets out of that car and opens fire and shoots Mr. Bailey, the offense of murder is over. That's what the statute says. There's language prior to or during the commission of the offense. Well, the instruction was correct, however, right? That is correct, Your Honor. The instruction was correct. But the gist of this argument is that despite that jury instruction being correct, the IPI 5.03, the prosecutor in this case completely turned that jury instruction on its head. What do we do with the cases that seem to indicate that when we're charging somebody with accountability murder, we could take into consideration the conduct that they took part in after the crime occurred? That's a good question. Thank you. That's absolutely correct, Your Honor. You don't have to tell me it's a good question. You'll answer it anyway, right? I'm neutral on the question. That is a factor. What happens after the offense, the escape, subsequent close interaction? What the person charged, his conduct afterwards. Well, whatever it might be, whether it's flight, whether it's aiding and abetting the actual perpetrator of the crime by, say, taking him home and hiding him in his apartment, things like that. Right. Things that happen after the offense. Aren't those issues a fact for the jury to take into consideration in determining whether or not he's guilty? Those are factors. And isn't it proper for the prosecutor in closing argument to refer to that behavior? Yes, it is. May I answer the question now? Sure. Thank you. Let me see if I can answer that for you. Well, you go ahead. I will try to ask for oral. Go ahead. Your answer would be there's no such thing as being accountable after the fact. However, after-the-fact conduct can create inferences as to what the before-the-fact or during-the-fact conduct or intent may have been. That's what happens when you spend so much of your life teaching evidence in the U.S. Well, and if I could expound on that answer, Your Honor, exactly what he said. That conduct can be considered. But the state still has to prove the intent before or prior to and during the offense. It's not enough simply to prove this knowledge intent factor after the murder is over. So if the prosecutor would have gotten it and said, yes, you can consider this as a factor when you're ultimately determining whether we have proven the intent factor prior to or during the offense, that would have been perfectly okay. But the prosecutor didn't do that. The prosecutor said, jury, it doesn't matter if Anthony did not know of this plan beforehand. It doesn't matter if he didn't know what Sims was going to do. It didn't matter that he didn't share his intent. Once Sims got out of the car and opened fire, the state says, well, he didn't leave. He sat there in the car and he waited for Sims to get out of the way. Well, there's more evidence. There is. There's more fine-tuned evidence than that. There is some evidence that he crept up slowly and waited and crept up some more, which would indicate a state of mind of awareness of what was going on and a desire to stay with the defendant while the crime was being committed. However, that does not reflect on the blanket statement of the state, which seemed to discount that aspect but only the fact that the flight as such and the assistance during the flight was all that was necessary. That's your contention. That's absolutely correct. We're not saying that the state failed to put on any evidence. I mean, we have got conflicting stories about what happened. The jury was given these two different stories. It was a very closely balanced case. I'll give you that. What about most of the, if not all of the, statements of the prosecutor that you find objectionable were, in fact, objected to by defense counsel at trial? Yes, Your Honor, the defense counsel did object to all of those. And the trial court sustained most of them. No, the trial court overruled the objections, Your Honor. I'm looking at your brief. If I say sustained, that's a complete, utter screw-up. When the prosecutor was making these misstatements of accountability law to the jury, the defense counsel objected to that line of argument. And those objections were overruled. They were not sustained. So, in effect, the judge sanctioned those misstatements of the law in the eyes of the jury. Are you sure you've got the record right? Because, well, I'm relying on your brief, starting at page 21. Now, this is that portion of your brief which addresses argument two, misconduct and rebuttal and closing argument. And if you look at page 21, you first cite to an argument made by the state that simply the police are bad and that's its defense. Defense counsel objected. Court sustained. That's an error. The objections were overruled, Your Honor. However, the statements that the prosecution made were not that blandly oblivious to the elements of accountability. All that those statements appeared to say is that we don't have to worry about the state of mind before the crime was committed. If there is indication, or at least a spin that could be given to the prosecutor's statement, if during the commission of the crime he stayed, which would then be inferably an acquiescence to its commission and a desire to help by sticking around to act as the escape vehicle. Now, that would be a proper characterization of the elements. But that's not exactly what the prosecutor said. But he didn't say you don't have to worry about his state of mind during the commission of the offense. He said you don't have to worry about whether he was aware of the intent when the crime started out. But during the commission of the crime, he stuck around, meaning, in other words, which is a statement that doesn't foreclose the fact that the defendant during the commission of the crime was then aware of what was happening and made a decision then and there to assist in the escape, which would be a collaboration with the commission of the crime. After all, the wheelman in a robbery is assisting in the robbery, even though his duties in the commission of the offense all take place afterwards. But he is part of the mechanism that enables the crime. Well, that's true, Your Honor. But in the example that you give in the Andravi, the wheelman knows what the robber is going to do when he gets out of the car and goes into the bank. But if during the shooting a decision is made by the wheelman that, yes, I will be the wheelman, then accountability would not be thwarted, even though he knew nothing of it beforehand. And do the statements of the prosecutor that you cite negate that as being the characterization that could be given to that argument? Well, let me make a few points, Your Honor. First, the case People v. Dennis is instructive to exactly what you're stating here. In that case, the jury, this is an armed robbery case, the jury asked two questions to the judge about when the offense of armed robbery was complete. Now, are you shifting gears now and talking about the notes, or are we still talking? I'm going to get back to your question, I promise you. But I think this is going to be a nice segue into answering that. So the judge responded by telling the jury that it could consider things that happened during the period of time in the activities during the escape. The court looked at that and said that instruction was erroneous. Escape is not an element of armed robbery. And because the court couldn't tell what the basis of the jury's finding was, that was a prejudicial error. And here, the things that you're talking about go to the point that you made earlier about reasonable doubt. We're acknowledging that there was some evidence that the jury could have looked at to find that Anthony had some knowledge about what was going on. But there's also an equally plausible amount of story and evidence that shows that he did not. If you look at what Anthony's statement was. Well, I'm looking at the statement that you quote in your own brief at page 26. This is my own brief, Your Honor? Pardon? In your brief. I'm looking at the last line. Even if the defendant didn't know Clayton Sims was going to shoot Brandon Beatty before Clayton Sims got out of the car, when Clayton Sims did start shooting, the defendant didn't leave. Now, that's a statement that's consistent with the notion that he, even if he hadn't made the decision beforehand to assist in the entire venture, that he made that decision during the course of the crime to assist in the commission of the crime once he became aware of what was happening. Well, the case law, what the Supreme Court says and what the jury instruction says and what the statute itself says, it talks about conduct that happened prior to or during the offense. Well, why isn't the statement that the defendant didn't leave once the crime started consistent with the notion that he decided then and there to assist in its commission by remaining on the premises in order to assist in the escape? That's a separate offense. Escape is not a first degree murder. I think at this point, you and I are on different wavelengths. Well, once Mr. Sims gets out of the car, and we're taking the prosecutor at his word here, we're assuming that Anthony did not know what Sims was going to do when he got out of that car. Once he gets out of the car and opens fire, the offense is over. Escape is not an element of first degree murder. Well, once the offense is being committed, there is nothing in here that says that when he made his decision to stick around that the shooting had terminated. We don't know what that sequence might have been. It involved taking a gun, aiming it, shooting it, and at what point the driver becomes aware of what the passenger is doing is open. But if he makes his decision to stick around when the crime is in the course of its commission, that would be sufficient to render him accountable. Again, Your Honor, I think that's something that the prosecutor would have said, but this is a factor that the jury could consider in making its ultimate decision about whether Anthony had this knowledge prior to or during the offense. Then I agree with you. Why don't we shift gears here for this moment? Can we move on to the jury notes? Yes, the jury notes. Before you get there, though, I must apologize to you. I was looking at the wrong brief when I quoted you that statement. You were right. The objections that you were referring to were, in fact, overruled. Thank you, Your Honor. I just have an opening barrage on the jury notes to cut to the chase. What should the judge have said? Well, first, what the judge should have done when the prosecutor was making these misstatements of laws was he should have sustained the objections that the public defender made here. No, I'm talking about the notes. And then once the jury started deliberating, they deliberated for two days. The first couple of questions, the first two that came out— His responses were correct. I think it's correct. He looked at People v. Dennis. It's clear that the judge was— What should he have said once he got the third? Well, once he's getting the third, fourth, and fifth and sixth notes and the jury is asking the same question in a slightly different way, when is this offense over? I think, as I might counsel, at this point, the difference that I noted between your perspective and mine becomes a glaring one because if I'm correct and that the crime can be acquiesced to during its commission and that such acquiescence can be inferred from the fact that the defendant decides to stay there and ultimately drive away, then the position of the judge in his reluctance to respond to the note becomes something at the very least understandable, if not the proper course, the only proper course for him to have taken. Because in order to answer the juror's questions as to what constitutes during, quote, during the commission of the crime, close quote, will depend on inferences which only the jury could draw. And had the court decided to make those inferences, then the court would have been, then you would have been here arguing, and rightfully so, that the court preempted the jury in directing basically findings on factual questions concerning inferences of someone's state of mind. Well, I think what's important to get back to is that the cause of this jury's confusion, and it's undeniable that the jury was confused based on these seven notes, is that that was caused by the prosecutor's closing argument. This is out of your brief, then. The defense counsel argued the judge should instruct the jury that driving away from the scene of the crime is not an element of the offense. That was what the defense suggested. Would that have been proper? I'm sorry. Can you repeat that? Would that have been proper? Can you repeat the instruction? I'm sorry. The defense attorney said what you should tell the judge is that driving away from the scene of the crime is not an element of the offense. That's absolutely correct. That's a statement of law. You see, that's where I fall off your slack. Well, let me go back to answer your initial question. That is interpreting a particular factual situation for the jury. He's not supposed to do that. There are circumstances where driving away from the scene could raise an inference that he was accountable for the murder. That's the whole point. Exactly right. What the defense has suggested here in this particular instruction is that there was no way that the judge could give him a proper instruction on accountability without finding the defendant not guilty. Well, I think if you go back to the jury instruction conference, I think one of the instructions that could have been given that might have helped the jury here was essentially language that comes right from the Illinois Supreme Court in People v. Perez. That instruction essentially says, presence plus knowledge that a crime was being committed without more is insufficient to establish accountability. That's what the law is. That's not argumentative. It's simple. I know, but the jury wasn't inquiring about that. They were inquiring about a factual situation. They wanted to know what during meant in the context of the instruction they had received. And what I was asking you is, how would you make it clearer to the jury what the law was? Well, I agree. The judge is in a really difficult position here. Well, thanks. Once the judge didn't sustain those objections that the public defender made to these misstatements of law, once the jury's—I mean, that's confusing. I'd be confused. Well, now you're really kind of segwayed into cumulative. The Supreme Court says one thing. The statute says one thing. The jury instruction says one thing. And then you've got this prosecutor saying another thing entirely. The public defender objects, and the court overrules the objections. If I'm a juror, well, you know, these objections are overruled. The prosecutor must have something here. They're faced with these two competing definitions of what accountability is, and there's no other way to explain what these seven notes are over a period of two days. You really attribute some of their confusion to what the prosecutor said to them. What the prosecutor said to them, and then the judge really had his hands tied. I mean, I agree that he tried to do the right thing. He didn't want to give something to the jury that would make them—that would be a factual determination. So I still contend. But he was saddled with the misapprehension that had been created in the juror's mind about the nature of accountability by the prosecutors of Newmark. I couldn't say any better. He gave you your argument. Okay, good. You're saying it's a cumulative matter. It's a cumulative matter. Well, you're saying more than that. Well, because cumulative means you do a simple addition. You're doing a multiplication because you're saying the one exacerbates the other. It's not simply added on to the other. It's an exacerbation of the other. And the two work hand-in-hand synergistically to create an error of greater magnitude. And it all comes down to whether we have any confidence in the jury's finding here that it was based solely on this conduct that Anthony committed before or during the offense and not based on these misstatements of what the prosecutor said the accountability was. And for that reason, I'm asking that Anthony be given a new trial. We'll give you an opportunity to respond after we agree from the state, okay? Thank you, Your Honor. Thanks a lot. Good morning, Your Honor. Good morning. Can I ask you a question right off the bat? Yes. Do you think this jury was confused? No, they weren't confused. They wanted, if anything, that they finally, and actually their last question that they asked on the following morning indicated that they had come to a resolution of that, which was basically when this offense ended. And when they asked about the language, what was the significance of the language, the word after being omitted from the instruction, right there they showed an indication of what they were seeking. And they were seeking a factual resolution. And this is something that the trial court could not do. The trial court was very careful in framing the responses and in even commenting at the motion for new trial, that he did not rule on this flippantly. He didn't just say, you know, continue with your deliberations. You've been instructed. The trial court was extremely concerned that it not delve into the factual situation in this case. Your Honors, regarding the people's rebuttal closing argument, the people did not argue in this case that the defendant was accountable for this shooting merely because he drove Sims, the shooter, away after the offense. In this case, the record is filled with examples of arguments, both in the people's opening closing argument and rebuttal. Do you get the impression that the defendant at least has a point with respect to the fog The court in this case was thoroughly familiar with what he considered to be, and properly so, I think, a controlling case, people v. Dennis. And so he gave the Dennis instruction. Given the context of the question asked by the jurors, the Dennis instruction didn't help them at all, did it? It ultimately did, though. Well, he told them to follow the elements, and they didn't know what the elements were. So how does that help? But then the court did direct them to what instruction? Well, first of all, let me ask you this. Can we fault the trial judge for following the Supreme Court direction? Not at all. In the context of the case? First of all, what's our standard of review when we decide whether or not he blew it? Abuse of discretion. Abuse of discretion. The trial court did not abuse its discretion in responding to the jury's questions. How could he ever if he uses the Supreme Court directive? Could we ever say that he abused his discretion by giving them the Dennis instruction? Well, and if he didn't follow the Supreme Court direction, Well, of course, we could say that, couldn't we? We could say that given the context of this case, you shouldn't have used Dennis, because it clearly was inappropriate in this case. We'd have to say that, wouldn't we? Or maybe we should say that just to save. In either event, the trial judge isn't going to be very happy with this, is he? No, and it wasn't inappropriate in this case. When you look at, I think what comes of it. Maybe it wasn't inappropriate, but did it help the jury at all? I think ultimately it did. When they finally arrived at, okay, aha. Do you really think the jury had an epiphany when the judge turned them down five times, that they then had an epiphany about what the elements were, or were they simply resolved to finish their deliberation without any help from the court? No, because I think when they asked finally what the significance of the word after meant, they did have this epiphany. Aha, this is what they mean.  Once the shooting started, anything the defendant did in waiting and in telling him to hurry up or come out before I leave you, wasn't aiding in the commission of the offense. This wasn't where the shooter did one act. The shooter fired at least 11 shots. And it was argued, another point that was argued to the jury. This is a point I will interrupt you because I anticipated a shorter answer. Yes, okay. Do you think that the jury would have had less confusion initially had the judge sustained the objection to the prosecutor's characterization of the elements? And I ask that in conjunction with another question. If the judge decided to sustain the objection to the prosecutor's characterization, would he have risked any error in doing it at that juncture? He might have risked error once the note comes in from the jury to impose some kind of definitive clarity to their question at that point. But if he simply sustained the objection to the prosecutor and said to the jury, you know, the objection is sustained, you will be instructed on the elements, you'll follow those instructions. Wouldn't that have helped? I don't know if it would have helped. And I think that when we're reviewing... Would he have committed any error in sustaining the objection to the prosecutor? Would that have certainly be within the latitude of his discretion? I think that when you look at the people's closing arguments in context of their entire argument, that they did not improperly argue the law of accountability. And it was made clear to this jury... Well, they argued the very margins of the law, which at that point could have been spun in various conflicting directions. And wouldn't that have contributed to the confusion of the jury as to when the acquiescence of the defendant should have been made to the commission of the crime? Respectfully, no, Your Honor. When you said they argued the very margins of the law, the people still reiterated to the jury not only the instructions that were given to them, but also how the facts in this case fit in and even went further. After arguing that the fact that the defendant in this case waited as the shooting was going on, inched forward in the street as he continued shooting, said, come on before I leave you, but also argued that it could be inferred from the testimony about the gun that was used and about the appearance of this gun that the defendant did in fact know that he was in possession of it. Incidentally, he brought that up. Frankly, it's not worth spending a lot of time on it. But that gun is not that visible. I actually had my clerk look it up on the computer. It's a small gun. It's not a machine gun, you know, where you're holding it in your hand like an M-12 or whatever. It's a small M-16. It's a small pistol. It's a pistol-like apparatus. Have you been in the service? Well, Your Honor, I think that in this case that the people's arguments pointed out to the jury what they needed to find in order to find him accountable and that his actions in the defendant's actions in waiting, not only driving him there because there was evidence also that he was told to follow the car, that he was told, there goes the dude that shot me. So what you're suggesting to us is even though this jury sent out persistently seven questions all focusing on pretty much the same issue, the trial judge's responses were essentially the same as they were for the first two, that the trial judge committed no error because he followed the Supreme Court. And because to give any other answer would have delved into the facts of this case. The jury was repeatedly asking for an interpretation of the facts in this case. But in the face of this kind of juror confusion, isn't the trial judge under some kind of an obligation to frame some kind of a response that doesn't keep reiterating the same thing over and over and over again when he knows what the problem is? And actually, Your Honor, arguably the only objection that was interposed was to the last note that came out. There was a note. Oh, you mean you're talking about forfeiture or waiver now because defense counsel didn't object. Well, and defense counsel actually said that's fine, sounds good, basically agreed. Not at the beginning. Not at the beginning. He did have one suggestion. And that would have been simply wrong. Well, arguably, yes. Yes. So the court was in a... A quandary. A quandary. Maybe it has to do with the whole problem of how we have crafted the law and the instructions, the IPI instructions on accountability. Maybe that's where the problem is. Well, as it stands now, though, Your Honor, under the law as it exists and under the IPI instructions, the trial court acted properly in this case and did not abuse its discretion in giving responses. What about the strong, strong recommendation in People v. Childs that when a trial judge is confronted with a confused jury that he has to make his best or her best efforts to help them out and clarify? Childs did not involve factual situations. Well, why does it have to? As long as you've got a confused jury, doesn't the general principles that govern Childs govern the trial court? Now, if the IPI instructions, which are... Basically, the judge seems to be saying do your best to help them out. But it is still the law that the judge... Then the question becomes, no, your answer is that in this case he did do his best. And he did. Within the confines of what he was compelled to do. Correct. That's the answer. Right, and we're looking whether abuse is a discretion and he didn't. So should we have a bright-line rule that when a jury is obviously confused, that if the lawyers don't help the judge, it cannot be an abuse of discretion? Should we have such a rule? I'm sorry, if the lawyers don't participate? No, they don't help the judge in coming to some conclusion. There didn't seem to be any help for this judge. Well, because the defense counsel wanted the judge to answer that, which would have been wrong. In other words, it should be the lawyers who come up with the answer for the judge. Is that what the law should be? No, Your Honor. It's still within the judge's discretion. It's for the judge to decide and regulate the substance of the responses to questions sent out by the jury with input from counsel, but it's still the task force. The judge's responsibility to decide what the answer should be. Yes, Your Honor. Thank you. If there's no further questions, we'd ask that you affirm the defendant's conviction and sentence. Thank you. Mr. Z, do you want to focus on this jury note business for us? I know you've already made the point that you think the reason the jury was confused was because of the prosecutor's final argument. You don't think it had anything to do with the instructions that they were reading? Well, I think it had to do with the instructions. The instructions that they were reading included the word during, didn't it? Or prior to or during the offense. And they wanted to know what during meant. That's exactly right. I mean, the jury has to send notes about the same thing. Is it any different from a jury that sends out a question that says, what's a reasonable doubt? How do you answer that one? Well, look at the jury instruction for what reasonable doubt is. But, again, this all comes back to what the prosecutor argued in his closing argument. That's the point of the confusion. On the other hand, if you look at this in terms of its physical imagery, you know, it's not a complicated issue for the jury to know what the offense is. So what makes, you know, when you're finished shooting, the offense is over. I mean, that's not a difficult concept for a jury to grasp. So when they were asking their questions, they were trying to get not at what constitutes the temporal determinants or the temporal boundaries of the crime. They were trying to get at the state of mind of the defendant. And, consequently, that's an area where the judge was at his peril if he stepped in. It still goes back to the state's duty to prove that state of mind, that knowledge or intent prior to or during the offense, that the state has that burden, and they can't just by making this closing argument by saying that, don't worry about that, we can look at what happens after the shooting is over. They were asking the judge, tell us how we should characterize the defendant's presence at the scene while the shooting was going on. They wanted the judge as a 13th juror. It becomes very apparent. It's not really psychologically. The psychologists will tell you that's really not an uncommon position for jurors to be in, particularly early in their deliberative process. They always look upon the judge as sort of a 13th juror. They've established a decent relationship with the trial judge. They look upon the trial judge as sort of a 13th juror. And a more important one. It's because many of the questions that come out from the jury initially are, tell us how to decide this case, judge. I have two questions. One, would it have been helpful to this jury if the judge gave them Webster's definition of during? Webster's definition of during. That's possible. I mean, if the defendant was there with the attorneys and they agreed to give this, they could agree on a definition of what during was, it's possible that could have helped. My second question is when a jury is obviously confused, if there's six or seven questions, should the judge declare a misdraw? Or should he press the jury to come back with a verdict when they can't come to one so they can go home? Well, Your Honor, we never, I mean, this case, it never got to that point. No one requested a mistrial, either the defense or obviously the state. And there were never any notes that came back that indicated, you know, there's one juror who can't agree or anything like that. So it's pretty clear based on these seven notes that the jury was confused about this one thing, whether the definition of during could have helped. I don't know because that's just as Gordon said. The instruction for the elements of murder is pretty straightforward, as well as I think the common knowledge and understanding of what before an event happens and what during means. And then the question becomes, well, when did the murder end? And that's really the crux of all the confusion here. Mr. Zeeb, thank you very much. Ms. Galetti, thank you as well. The case was well-argued and well-briefed. It will be taken under advisement. Thank you, Your Honor.